**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LINDA I. WHITE, | ) | |
| | ) | Case No. _____ |
| Plaintiff, | ) | |
| | ) | Cook County, Il. Cir. Ct. Index No. |
| | ) | 2022L005275 |
| | ) | |
| vs. | ) | |
| | ) | |
| MIDWAY MEDICAL PRODUCTS, INC., | ) | |
| EXACTECH, INC., EXACTECH U.S., | ) | |
| INC., TPG CAPITAL, and TPG, INC., | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF REMOVAL

Exactech, Inc., and Exactech U.S., Inc. (collectively, "Exactech"), along with TPG Inc.

("TPG"), by and through their undersigned counsel, hereby provide notice pursuant to 28 U.S.C.

§§ 1332, 1441, and 1446 of the removal of this litigation from the Circuit Court of Cook County,

Illinois, to the United States District Court for the Northern District of Illinois, Eastern Division.

Federal jurisdiction exists in this action because there is complete diversity among the

properly joined parties and the amount in controversy exceeds $75,000. No defendant, with the

exception of MidWay Medical Products, Inc. ("MidWay"), is a citizen of Illinois. MidWay was

fraudulently joined to this litigation and so does not destroy complete diversity.

Exactech and TPG state the following grounds for removal:

1.     On or about June 13, 2022, Plaintiff Linda I. White filed a Complaint ("Compl.")

in the Circuit Court of Cook County, Illinois. *White v. MidWay Medical Prods., Inc., et al.*, No.

2022-L-005275. Plaintiff alleges that she suffered various injuries because of her experience using Exactech's Optetrak® system, a Class II medical device cleared by FDA for use in knee replacement procedures.

2.      As set forth more fully below, this case is properly removed because this Court has diversity jurisdiction. The amount in controversy with respect to all claims exceeds $75,000. Further, there is complete diversity of citizenship between the Plaintiff and all properly joined Defendants. Plaintiff White alleges that she is a citizen of Illinois. *See* Compl. ¶ 1. Defendants Exactech, Inc.; Exactech U.S., Inc.; and TPG Inc., are not Illinois citizens, and putative Defendant TPG Capital is a non-existent entity whose citizenship is disregarded for purposes of diversity. The only Defendant that resides in the same state as Plaintiff is MidWay, who is fraudulently added to the case in order to evade federal jurisdiction. This Court therefore should dismiss MidWay and exercise diversity jurisdiction over the properly joined Defendants.

## I.      THE PROCEDURAL REQUIREMENTS OF REMOVAL ARE MET.

3.      Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, orders, and other documents filed in the state court action are attached as Exhibit A.

4.      This Notice of Removal is timely because it is being filed no more than 30 days after any removing Defendant was served (and in fact no more than 30 days after service on any Defendant). *See* 28 U.S.C. § 1446(b). MidWay was served on June 29, 2022. Exactech was served on July 20, 2022. TPG was served July 25, 2022.

5.      The state court action is now pending in Cook County, Illinois, which is within the Eastern Division of the United States District Court for the Northern District of Illinois. This Court is therefore a proper venue for removal. *See* 28 U.S.C. §§ 93(a)(1); 1446(a).

6.      No properly joined Defendant is a citizen of Illinois, the state where this action

was brought. *See id.* § 1441(b)(2). TPG and Exactech have joined in this Notice of Removal, *see infra* at 13-14. Although the consent of fraudulently joined defendants is not required, MidWay nevertheless consents to this removal. MidWay's consent to this removal is attached as Exhibit B. The consent of "TPG Capital" is not required because it does not exist and cannot consent to removal.

7.     A copy of this Notice of Removal is being served on Plaintiff, and a copy is being filed with the state court. *See id.* § 1446(d).

8.     If any question arises about this removal, Exactech and TPG respectfully request the opportunity to present briefing and oral argument in support of removal.

## II.    REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.

9.     A defendant may remove an action from state court to federal court if the action could have originally been brought in federal court. *See* 28 U.S.C. § 1441(a). Here, federal jurisdiction exists based upon diversity of citizenship pursuant to 28 U.S.C. § 1332, because this is a civil action between citizens of different states and the amount in controversy totals over $75,000. *See* § 1332(a). "[T]he removing party must establish any disputed aspect of diversity jurisdiction by offering evidence which proves to a reasonable probability that jurisdiction exists." *Smith v. Am. Gen. Life & Accident Ins. Co.*, 337 F.3d 888, 892 (7th Cir. 2003) (quoting *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997)) (internal quotation marks omitted).

### A.    The Amount In Controversy Requirement Is Satisfied.

10.     The "amount in controversy" requirement for diversity jurisdiction must be satisfied by a preponderance of the evidence. 28 U.S.C. § 1446(c)(2)(B). Where, as here, state law prohibits plaintiffs from specifying the exact amount of damages sought, *see* 735 ILCS 5/2-

604.1-604.2, courts look to the nature and seriousness of plaintiffs' allegations to determine if the "amount in controversy" requirement is met. *See, e.g.*, *Chase*, 110 F.3d at 428 (affirming denial of remand because amount in controversy was satisfied based on, among other things, plaintiff's allegations of "serious, disabling physical and mental injuries that would result in loss of future earning potential"); *Gallo v. Homelite Consumer Prods*., 371 F. Supp. 2d 943, 948 (N.D. Ill. 2005) (concluding allegations of "severe and permanent injuries" warranted finding that more than $75,000 was in controversy).

11.     Plaintiff here has alleged that she "was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body and mind; suffered device-related complications including but not limited to additional surgeries and procedures, to expend money for medical care in the past and in the future; furthermore, [Plaintiff] was unable to and will in the future be unable to attend to her normal affairs and duties for an indefinite period of time and has sustained and will continue to sustain a substantial loss of income." *See* Compl. ¶ 95; *see also id.* at ¶¶ 89, 104, 127, 133 (repeating nearly *verbatim* allegations).

12.     Courts have routinely held that when plaintiffs, as here, "allege serious, permanent injuries and significant medical expenses, it is obvious from the face of the complaint that the plaintiffs' damages exceeded the jurisdictional amount . . . ." *McCoy by Webb v. Gen. Motors Corp.*, 226 F. Supp. 2d 939, 941 (N.D. Ill. 2002) (collecting cases).

13.     Additionally, although Plaintiff does not specify an exact amount of damages in the Complaint, it is facially apparent that the damages sought for all the claims together exceeds $75,000, exclusive of interest and costs, since she petitioned the court for "a sum in excess of

[the] jurisdictional limits of [the state] Court" for each of her five counts.[1] *See* Compl. at 26; *see also* 28 U.S.C. § 1332(a). In such cases, the "good-faith estimate of the stakes control," *McCormick v. Indep. Life & Annuity Co.*, 794 F.3d 817, 818 (7th Cir. 2015), if it "is plausible and adequately supported by the evidence," *Sabrina Roppo v. Travelers Comm. Ins. Co.*, 869 F.3d 568, 579 (7th Cir. 2017) (quoting *Blomberg v. Serv. Corp. Int'l*, 639 F. 3d 761, 763 (7th Cir. 2011)).

14.     Considering the nature of Plaintiff's alleged injuries, the scope of the damages sought, and the lack of any express limitation on the amount of damages sought, her claims plainly satisfy the jurisdictional amount requirement.

**B.     Complete Diversity of Citizenship Exists Among the Properly Joined Parties.**

15.     There is complete diversity of citizenship between the properly joined parties.

16.     Defendants Exactech, Inc., and Exactech U.S., Inc., are, and at the time of the filing of this action were, incorporated in Florida. *See* Compl. ¶¶ 12, 14. In addition, both have, and at the time of the filing of this action had, their principal place of business in Gainesville, Florida. Thus, for diversity purposes, they are both citizens of Florida. *See* 28 U.S.C. § 1332(c)(1).

17.     Defendant TPG Inc. is, and at the time of the filing of this action was, a Delaware corporation with its principal place of business in Fort Worth, Texas. Compl. ¶¶ 18, 20. Thus, for diversity purposes, it is a citizen of Delaware and Texas.

---

[1] The Law Division of the Circuit Court of Cook County, Illinois, has a jurisdictional minimum of $30,000. *See* General Orders of the Circuit Court of Cook County, General Order 1.2, 2.1(a)(1) (noting civil actions must seek damages in excess of at least $30,000 to be heard in the Law Division).

18.     Plaintiff alleges that Defendant TPG Capital is a Delaware corporation with its principal place of business in Texas, and a wholly-owned subsidiary of TPG Inc. No such entity exists—TPG Inc. does not have any subsidiary named "TPG Capital." That non-existent defendant's domicile is therefore ignored for purposes of determining diversity. *See Constance v. Austral Oil Exploration Co., Inc.*, 2013 WL 495779, at *4 (W.D. La. Feb. 6, 2013).

19.     Defendant MidWay is allegedly a citizen of Illinois; however, it was fraudulently joined and so does not destroy diversity. Compl. ¶ 7.

20.     Based on the allegations of the Complaint, Plaintiff Linda I. White is, and at the time of the filing of this action was, a citizen of Illinois. *Id.* ¶ 1.

21.     Accordingly, the properly joined Defendants are citizens of Delaware, Texas, and Florida, whereas Plaintiff is a citizen of Illinois. Complete diversity of citizenship therefore exists between Plaintiff and properly joined Defendants.

**C.      The Sole Illinois Defendant, MidWay, Is Fraudulently Joined.**

22.     MidWay's Illinois citizenship does not destroy diversity jurisdiction because it was fraudulently joined for that purpose alone. *See, e.g., Schwartz v. State Farm Mut. Auto Ins. Co.*, 174 F.3d 875, 879 (7th Cir. 1999) (affirming dismissal of case against fraudulently joined defendant); *Elrod*, 2020 WL 4284416, at *4-5 (denying a motion to remand after finding a non-diverse sales representative defendant was fraudulently joined).

23.     Under Seventh Circuit law, a plaintiff "may not join a nondiverse defendant simply to destroy diversity jurisdiction. The 'fraudulent joinder' doctrine, therefore, permits a district court considering removal 'to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction.'" *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 763 (7th Cir. 2009) (citation omitted) (quoting *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir.

1999)). The district court should ignore the presence of the non-diverse party for jurisdictional purposes if there is no "reasonable possibility that a *state court* would rule against" the non-diverse party. *See Schwartz*, 174 F.3d at 879 (emphasis added); *see also Hoosier Energy Rural Elec. Coop., Inc. v. Amoco Tax Leasing IV Corp.*, 34 F.3d 1310, 1314–15 (7th Cir. 1994); *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992) (noting that to prove fraudulent joinder, "[t]he defendant must show that, after resolving all issues of fact and law in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant.").

24.  "[I]n determining whether a defendant is fraudulently joined, the Court may '"pierce the pleadings"' and consider 'summary judgment-type evidence such as affidavits [regarding jurisdictional facts]." *Elrod*, 2020 WL 4284416, at *2. "[A]n uncontested affidavit of a nondiverse defendant is a sufficient basis to find fraudulent joinder." *Id.* at *3 n.2.

25.  To assess if the evidence showing fraudulent joinder is "contested"—*i.e.*, whether the complaint's allegations to the contrary are well-pled and would have a reasonable possibility of prevailing in *state court*—courts apply the same state-law pleading standards that would control after remand. *See Millman v. Biomet Orthopedics, Inc.*, 2013 WL 6498394, at *3 (S.D. Ind. Dec. 10, 2013); *In re Yasmin and Yaz (Drospirenone) Mktg., Sales Pracs. and Prods. Liab. Litig.*, 2010 WL 2402926, at *2 (S.D. Ill. June 15, 2010); *In re Darvocet, Darvon and Propoxyphene Prods. Liab. Litig.*, 889 F. Supp. 2d 931, 940-41 (E.D. Ky. 2012).

26.  Illinois is a fact-pleading state. Under that standard, "mere conclusory allegations unsupported by *specific facts* will not suffice [to state a claim]." *Porter v. Cub Cadet LLC*, 2020 IL App (2d) 190823, ¶ 10 (emphasis added). Put another way, "a complaint may not rest upon conclusions of fact unsupported by [specific] allegations . . . from which such conclusions may be drawn." *J. Eck. & Sons, Inc. v. Reuben H. Donnelley Corp.*, 213 Ill.App.3d 510, 515 (1991)

(allegation of intent to interfere with plaintiff's business failed for lack of specific factual allegations "from which . . . intent could be inferred"); *see also Daniel v. Chi. Trans. Auth.*, 2020 IL App (1st) 190479, ¶ 31 (rejecting allegation that defendant "was aware" of plaintiff's medical condition in absence of allegations demonstrating basis for knowledge); *Anderson v. Vanden Dorpel*, 172 Ill.2d 399, 408-09 (1996) (declining to credit unsubstantiated allegation that plaintiff was the "leading candidate" for a job); *Dennis v. Pace Suburban Bus Serv.*, 2014 IL App (1st) 132397, ¶ 25 (allegations that employer generally could have foreseen a type of misconduct insufficient to support claim that it "knew or should have known" of risk posed by particular employee). Similarly, "[a] pleading which merely paraphrases the elements of a cause of action in conclusory terms is not sufficient." *Welsh v. Commonwealth Edison Co.*, 306 Ill.App.3d 148, 155 (1999).

27.     Plaintiff named MidWay as a defendant under theories of strict product liability (Count IV) and negligence (Count V). However, there is no reasonable possibility that Plaintiff could recover in state court on either claim against MidWay.

### *i.*     *MidWay cannot be liable on Plaintiff's strict liability claim.*

28.     Plaintiff's strict liability claim against MidWay is barred as a matter of law by the Illinois Distributor Statute. *See* 735 ILCS 5/2-621. Under the Distributor Statute, a product liability claim against a non-manufacturer defendant must be dismissed once the non-manufacturer "file[s] an affidavit certifying the correct identity of the manufacturer of the product." *Id.* § 2-621(a), (b).

29.     The Distributor Statute has three narrow exceptions, under which a non-manufacturer may be subject to strict liability if it (i) "has exercised some significant control over the design or manufacture of the product, or has provided instructions or warnings to the manufacturer relative to the alleged defect in the product which caused the injury, death or

damage"; (ii) "had actual knowledge of the defect in the product which caused the injury, death or damage"; or (iii) "created the defect in the product which caused the injury, death or damage," *id.* § 2-621(c). None of these exceptions apply here for the reasons explained in ¶¶ 32-35, *infra*.

30.     Pursuant to the Distributor Statute, multiple courts have held non-manufacturers fraudulently joined based on affidavits that certified the manufacturer's identity and demonstrated that no exception to the statute applied. *See, e.g., Clay v. Philip Morris USA Inc.*, 2018 WL 11198356, at *2 (N.D. Ill. Nov. 6, 2018); *Millman*, 2013 WL 6498394, at *2-3; *Steel v. Ford Motor Co.*, 2011 WL 1485380, at *4-5 (N.D. Ill. Apr. 19, 2011).

31.     MidWay has submitted such an affidavit here. As set forth in the Declaration of David Ozzello II at ¶¶ 5-6 (attached as Exhibit C), MidWay has never manufactured the Optetrak® system, which it certifies is manufactured by defendant Exactech, Inc.

32.     The Ozzello Declaration likewise shows that there is no reasonable possibility Plaintiff could proceed against MidWay under any of the Distributor Statute's three exceptions. First, MidWay has never had any control over the design or manufacture of the Optetrak® system, and has never provided warnings or instructions to Exactech regarding any of the alleged defects in that product. *Id.* ¶¶ 7, 9. Second, each time Plaintiff received the Optetrak® system (in 2012 and 2015), MidWay had no actual knowledge of any of those alleged defects. *Id.* ¶¶ 14-16. Third, MidWay did not create any of those alleged defects. *Id.* ¶ 8.

33.     To the extent the Complaint alleges otherwise, it does so in conclusory fashion devoid of factual support. Plaintiff alleges generally that MidWay communicated with the surgeons to whom it sold Optetrak® about the device's performance. *See* Compl. ¶ 69 (communication "regarding failures and complications"), ¶ 110 (communication "regarding potential safety concerns, incidents, or issues"). But the Complaint contains no *specific facts* to

suggest that those communications—either individually or in the aggregate—gave Midway "actual knowledge" of *any* alleged defect at the time Plaintiff received Optetrak®. *Cf.* Compl. ¶¶ 120, 122. Indeed, the Complaint alleges *no* specific facts about the contents of *any* communication that MidWay had with *any* surgeon at *any* time.

34.     Plaintiff also has no reasonable possibility of showing that MidWay provided Exactech with "instructions or warnings relative to the alleged defects [in Optetrak®]." *Cf.* Compl. ¶ 112.[2] At the threshold, Plaintiff's only allegation regarding the contents of those unspecified "*warnings*" is that they were based on the same unspecified *communications* discussed *supra*, to which Plaintiff has added yet another layer of conclusory pleading. Moreover, the fact remains that MidWay did not provide Exactech with any warnings at all, Ozzello Decl. ¶¶ 9-10, and that "[t]he only warnings and instructions provided to [Plaintiff's physicians] were those that came . . . from [Exactech]," *Netherton v. Yamaha Motor Corp., U.S.A.*, 2007 WL 869480, at *2 (N.D. Ill. Mar. 19, 2007).

35.     Since none of the Distributor Statute's exceptions apply here, there is no reasonable possibility under Illinois law that Plaintiff could prevail on her strict liability claim..

### ii.     *MidWay cannot be liable on Plaintiff's negligence claim.*

36.     There is also no reasonable possibility that an Illinois court would permit Plaintiff to recover against Midway under a negligence theory.

37.     In order to prevail on a claim for negligence under Illinois law, a plaintiff must allege the existence of a legal duty. *See, e.g., Simpkins v. CSX Transp.*, 2012 IL 110662, ¶ 14. Plaintiff alleges two theories of negligence. First, the Complaint alleges that MidWay breached a

---

[2] Plaintiff does not allege either that MidWay controlled Optetrak®'s design or manufacture, *see* 735 ILCS 5/2-621(c)(1), or that MidWay itself created any defect, *id.* § 2-621(c)(3).

duty not to sell a product it knew or should have known was defective. Compl. ¶ 132(a) (selling device), ¶ 132(c) ("ignor[ing]" known defects), ¶ 132(d) (failing to "perform due diligence" to discover defects). Second, it alleges that MidWay failed to warn Plaintiff's physician of the defect. *Id.* ¶ 132(b). Neither theory has any chance of success, because Plaintiff has failed to allege that MidWay owed her any duty, or breached any duty it allegedly owed. *See Elrod*, 2020 WL 4284416, at *2 (explaining that "the existence of a duty between the non-diverse defendant and the plaintiff" is a jurisdictional fact subject to proof by affidavit when assessing fraudulent joinder).

38.     Under Illinois's law of negligence, both the duty to sell a non-defective product and the duty to warn of a defect attach only where a distributor knows or should know of the risk posed by the defective condition. *See, e.g.*, *Porter*, 2020 IL App (2d) 190823, ¶ 11 (duty to design and sell a non-defective product); *Walker v. Macy's Merchandising Grp., Inc.*, 288 F. Supp. 3d 840, 871-72 (N.D. Ill. 2017) (duty to warn of a defect). As to MidWay—which did not contribute to the Optetrak®'s design, manufacture, or warnings and had no knowledge of any defects in the same—there is no reasonable possibility that Plaintiff will be able to establish this essential element of her claim. *See Netherton*, 2007 WL 869480, at *3 (holding that plaintiff had failed to establish duty owed by distributor that "had no knowledge of, and did nothing to create, the alleged defect").

39.     Under Illinois pleading standards, Plaintiff cannot state a claim by "simply writ[ing] the words 'knew or should have known' in a [pleading]." *Porter*, 2020 IL App (2d) 190823, ¶ 13. The Complaint here offers nothing more. As discussed *supra*, at ¶¶ 32-33, it contains no well-pled facts regarding what MidWay *actually* knew.

40.     With respect to what MidWay *should* have learned through reasonable diligence by July 27, 2015 (the date Plaintiff allegedly received her last Optetrak® device), Plaintiff alleges only that in 2012, a single article reported a set of "[p]oor results." *See* Compl. ¶ 54. At the threshold, the Complaint contains no facts linking the particular outcomes reported in 2012 to the specific implant failures Plaintiff allegedly experienced years later. It fails, in other words, to show that the 2012 study *could* have put MidWay on notice of the risk that allegedly caused Plaintiff's injuries.

41.     But more fundamentally, the law is clear that MidWay had no duty to seek that study out to begin with. In Illinois, a sales agent has no duty to independently substantiate or second-guess the information a manufacturer provides about its products, unless the agent has reason to believe the manufacturer's materials are untrue. *Elrod*, 2020 WL 4284416, at *4. As explained in the Ozzello Declaration, at ¶¶ 11-15, Exactech provided MidWay with extensive scientific information on the performance of the Optetrak® system. The Complaint, in turn, "has failed to allege any *facts* suggesting that [MidWay] knew or should have known" that information was wrong. *Elrod*, 2020 WL 4284416, at *4. Plaintiff has failed to plead that MidWay had any legal duty to investigate further.

42.     Moreover, even if Plaintiff had alleged a *duty*, her Complaint would have no reasonable possibility of success because it fails to plead facts showing a *breach*. Indeed, Plaintiff alleges nothing at all about MidWay's conduct beyond the bare sale of her Optetrak®. The Complaint repeats that MidWay acted "negligently and carelessly," *see* Compl. ¶¶ 132, 132(b), 132(c), 132(e), but that is a "pure conclusion[] of the pleader," which "adds nothing to the complaint without some further allegations of specific facts." *Adkins v. Sarah Bush Lincoln Health Ctr.*, 129 Ill.2d 497, 519-20 (1989). As the Illinois Supreme Court has explained, "an

12

actionable wrong cannot be made out merely by characterizing acts as having been wrongfully done." *Id.*

43. In short, there is no reasonable possibility that MidWay can be held liable under Plaintiff's strict liability or negligence claims. Accordingly, MidWay is fraudulently joined for purposes of establishing federal jurisdiction. Because diversity of citizenship indisputably exists as between Plaintiff and the properly joined Defendants, removal of this case is proper pursuant to 28 U.S.C. §§ 1332 and 1441.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Exactech and TPG hereby demand a jury trial on all triable issues in this action.

## CONCLUSION

WHEREFORE, Notice is given that this action is removed from the Circuit Court of Cook County, Illinois to the United States District Court for the Northern District of Illinois, Eastern Division.

Date: July 29, 2022

Respectfully submitted,

By: *Elizabeth C. Curtin*
Elizabeth C. Curtin
ecurtin@sidley.com
Michelle A. Ramirez
michelle.ramirez@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

Gabriel Schonfeld (*pro hac vice* forthcoming)
gschonfeld@sidley.com
SIDLEY AUSTIN LLP

1501 K Street NW
Washington, DC 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711

*Attorneys for Defendants Exactech, Inc.;
Exactech U.S., Inc.; and TPG Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 29th day of July, 2022, I electronically filed the foregoing

with the Court using the CM/ECF system, and delivered the foregoing to all counsel of record by

electronic means and by messenger.

*/s/ Elizabeth C. Curtin*
Elizabeth C. Curtin

# Exhibit A

District 1

# Case Summary

### Case No. 2022L005275

| | | | | |
|---|---|---|---|---|
| **Linda White -vs- Midway Medical Products, Inc.,Exactech, Inc.,Exactech U.S., Inc.,TPG Capital,TPG, Inc.** | § § § § | | Location: Judicial Officer: Filed on: Cook County Attorney Number: | **District 1** **Calendar, D** **06/13/2022** **56079** |

---

## Case Information

Case Type: Product Liabilty - Jury
Case Status: **06/13/2022 Pending**

## Assignment Information

**Current Case Assignment**
Case Number      2022L005275
Court                    District 1
Date Assigned    06/13/2022
Judicial Officer  Calendar, D

---

## Party Information

| | | |
|---|---|---|
| | | *Lead Attorneys* |
| **Plaintiff** | **White, Linda I.** | **Flowers, Peter John** *Retained* |
| **Defendant** | **Exactech U.S., Inc.** | |
| | **Exactech, Inc.** | |
| | **Midway Medical Products, Inc.** | |
| | **TPG Capital** | |
| | **TPG, Inc.** | |

---

## Events and Orders of the Court

| | | |
|---|---|---|
| 08/16/2022 | **First Time Case Management**  (10:00 AM)   (Judicial Officer: Schneider, Catherine) Resource: Location L2207 Court Room 2207 Resource: Location D1 Richard J Daley Center | |
| 07/22/2022 | Affidavit Of Service Filed *Affidavit of Service on Defendant Exactech Inc.* | |
| 07/22/2022 | Affidavit Of Service Filed *Affidavit of Service on Defendant Exactech US Inc.* | |
| 07/14/2022 | Summons Issued And Returnable *Summons - Exactech, Inc.* | |
| 07/14/2022 | Summons Issued And Returnable *Summons - Exactech U.S., Inc.* | |

PAGE 1 OF 2                              Printed on 07/25/2022 at 2:32 PM

District 1

## Case Summary

### Case No. 2022L005275

07/14/2022  
Summons Issued And Returnable  
*Summons - TPG Capital*

07/14/2022  
Summons Issued And Returnable  
*Summons - TPG Inc.*

07/14/2022  
Affidavit Of Service Filed  
*Affidavit of Service Defendant Midway Medical*

06/13/2022  New Case Filing

06/13/2022  
Personal Injury (Product Liability) Complaint Filed (Jury Demand)  
*White EKA Complaint*

06/13/2022  
Exhibits Filed  
*White EKA Civil Action Cover Sheet*

06/13/2022  
Summons Issued And Returnable  
*White EKA Summons - Def. Midway Medical Products*

Printed on 07/25/2022 at 2:32 PM

Il Law Division initial Case Management Dates will be heard via ZOOM.
or more information or your Meeting Class id at https://www.cookcountycourt.org/HOME/Zoom-Links/Agg4908_SelectTab/12
emote Court date: 8/16/2022 10:00 AM

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

FILED
6/13/2022 3:48 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022L005275
Calendar, D
18269726

Linda L.White

v.

Midway Medical Products, Inc., Exactech, Inc., Exactech U.S., Inc., TPG
Capital and TPG, Inc.

No. _____

### CIVIL ACTION COVER SHEET - CASE INITIATION

A Civil Action Cover Sheet - Case Initiation shall be filed with the
complaint in all civil actions. The information contained herein
is for administrative purposes only and cannot be introduced into
evidence. Please check the box in front of the appropriate case
type which best characterizes your action. Only one (1) case type
may be checked with this cover sheet.

Jury Demand ❑ Yes ❑ No

**(FILE STAMP)**

### PERSONAL INJURY/WRONGFUL DEATH
CASE TYPES:
- ❑ 027 Motor Vehicle
- ❑ 040 Medical Malpractice
- ❑ 047 Asbestos
- ❑ 048 Dram Shop
- ☑ 049 Product Liability
- ❑ 051 Construction Injuries
  (including Structural Work Act, Road
  Construction Injuries Act and negligence)
- ❑ 052 Railroad/FELA
- ❑ 053 Pediatric Lead Exposure
- ❑ 061 Other Personal Injury/Wrongful Death
- ❑ 063 Intentional Tort
- ❑ 064 Miscellaneous Statutory Action
  (Please Specify Below**)
- ❑ 065 Premises Liability
- ❑ 078 Fen-phen/Redux Litigation
- ❑ 199 Silicone Implant

### TAX & MISCELLANEOUS REMEDIES
CASE TYPES:
- ❑ 007 Confessions of Judgment
- ❑ 008 Replevin
- ❑ 009 Tax
- ❑ 015 Condemnation
- ❑ 017 Detinue
- ❑ 029 Unemployment Compensation
- ❑ 031 Foreign Transcript
- ❑ 036 Administrative Review Action
- ❑ 085 Petition to Register Foreign Judgment
- ❑ 099 All Other Extraordinary Remedies

By: Peter J. Flowers, #56079
　　　(Attorney)　　　　　　　　　(PRO SE)

### COMMERCIAL LITIGATION
CASE TYPES:
- ❑ 002 Breach of Contract
- ❑ 070 Professional Malpractice
  (other than legal or medical)
- ❑ 071 Fraud (other than legal or medical)
- ❑ 072 Consumer Fraud
- ❑ 073 Breach of Warranty
- ❑ 074 Statutory Action
  (Please specify below.**)
- ❑ 075 Other Commercial Litigation
  (Please specify below.**)
- ❑ 076 Retaliatory Discharge

### OTHER ACTIONS
CASE TYPES:
- ❑ 062 Property Damage
- ❑ 066 Legal Malpractice
- ❑ 077 Libel/Slander
- ❑ 079 Petition for Qualified Orders
- ❑ 084 Petition to Issue Subpoena
- ❑ 100 Petition for Discovery

** _____

Primary Email: pjf@meyers-flowers.com

Secondary Email: fvc@meyers-flowers.com

Tertiary Email: dmk@meyers-flowers.com

**Pro Se Only:** ❑ I have read and agree to the terms of the *Clerk's Office Electronic Notice Policy* and choose to opt in to electronic notice
form the **Clerk's Office** for this case at this email address: _____

### IRIS Y. MARTINEZ, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Il Law Division initial Case Management Dates will be heard via Zoom. son Jury
or more information and Zoom Meeting IDs go to https://www.cookcountycourt.org/HOME/Zoom-Links/Agg4906_SelectTab/12
emote Court date: 8/16/2022 10:00 AM

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

FILED
6/13/2022 3:48 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022L005275
Calendar, D
18269726

| | |
|---|---|
| **LINDA I. WHITE,** | |
| Plaintiff, | Case No. |
| vs. | |
| **MIDWAY MEDICAL PRODUCTS, INC., EXACTECH, INC., EXACTECH U.S., INC., TPG CAPITAL and TPG, INC.,** | |
| Defendants. | |

## COMPLAINT AT LAW AND JURY DEMAND

NOW COMES the Plaintiff, LINDA I. WHITE, by and through her attorney, PETER J. FLOWERS of MEYERS & FLOWERS, L.L.C. complaining against Defendants MIDWAY MEDICAL PRODUCTS, INC., EXACTECH, INC., EXACTECH U.S., INC., TPG CAPITAL and TPG, INC. and alleges:

### PARTIES

1.   LINDA I. WHITE now and at all times relevant resided in the State of Illinois.

2.   LINDA I. WHITE was implanted with Exactech Optetrak Knee Systems (hereinafter referred to as "OPTETRAK") in the State of Illinois.

3.   LINDA I WHITE's OPTETRAK knee devices were removed from her left and right knees in the State of Illinois.

4.   At all relevant times, MIDWAY MEDICAL PRODUCTS, INC. (hereinafter referred to as "MIDWAY MEDICAL") was registered as an Illinois Corporation.

1

5. At all relevant times, MIDWAY MEDICAL, has been a sales agent and distributor for Exactech medical devices in the State of Illinois.

6. At all relevant times, MIDWAY MEDICAL was a sales agent and distributor for the OPTETRAK in the State of Illinois.

7. Upon information and belief, at all relevant times, MIDWAY MEDICAL conducted business in the County of Cook, State of Illinois.

8. Upon information and belief, MIDWAY MEDICAL has earned and continues to earn a monetary commission on Exactech products sold in Cook County and Illinois from EXACTECH, INC. and/or EXACTECH U.S., INC.

9. Upon information and belief, MIDWAY MEDICAL has employees and/or agents who sell EXACTECH products and call on healthcare professionals and facilities in Cook County, Illinois and the State of Illinois.

10. David C. Ozzello is the president and agent MIDWAY MEDICAL. The agent address for Midway Medical Products, Inc. is 626 Fox Glen Drive, St. Charles, Illinois 60174.

11. On May 23, 1996, EXACTECH, INC. filed a Form S-1 with the Securities and Exchange Commission (hereinafter referred to as "SEC") noting that David C. Ozzello owned 2,250 shares of Exactech common stock.[1]

12. At all times relevant, EXACTECH, INC. was a foreign corporation registered in the State of Florida and for an unknown period of time EXACTECH was registered in Illinois as a foreign corporation.

13. EXACTECH, INC.'s registered agent is Corporation Service Company at 1201 Hays Street, Tallahassee, Florida 32301-2525.

---

[1] http://edgar.secdatabase.com/2564/95017096000256/filing-main.htm

14. At all times relevant, EXACTECH U.S., INC. was a foreign corporation registered in the State of Florida and for an unknown period of time EXACTECH U.S., INC. was registered in Illinois as a foreign corporation.

15. EXACTECH U.S., INC.'s registered agent is Corporation Service Company at 1201 Hays Street, Tallahassee, Florida 32301-2525.

16. EXACTECH U.S., INC. is a wholly owned subsidiary of EXACTECH, INC.

17. In 2018, EXACTECH, INC. and EXACTECH U.S., INC (hereinafter collectively referred to as EXACTECH) were purchased by and merged with TPG Capital. TPG Capital is now owned by a publicly traded company TPG, INC.

18. TPG CAPITAL is a foreign corporation incorporated in Delaware and maintain their principal executive offices in Texas.

19. TPG CAPITAL is a wholly owned subsidiary of TPG, INC.

20. TPG, INC. is a foreign corporation incorporated in Delaware and maintain their principal executive offices in Texas.

21. TPG, INC.'s principal place of business is 301 Commerce Street, Suite 3300, Fort Worth, Texas 76102.

22. TPG, INC.'s agent for service is Bradford Berenson, General Counsel, 345 California Street, Suite 3300, San Francisco, California 94104.

23. In December of 2021, TPG, INC. stated in a SEC S-1 filing, that TPG, INC. they own or have a right to use various trademarks, trade names, service marks and copyrights of TPG Capital.[2]

---

[2] https://www.sec.gov/Archives/edgar/data/1880661/000119312521358756/d197780ds1.htm (accessed June 11, 2022)

24.     Upon information and belief, TPG CAPITAL and TPG, INC. (hereinafter referred to collectively as "TPG") owns EXACTECH.

25.     TPG exercises decision making and control of EXACTECH by and through having TPG's Todd Sisitsky (President and Co-Managing Partner, TPG Capital), John Schilling (Partner, Head of Operations, TPG Capital) and Kendall Garrison (Principal, TPG Capital) sit on EXACTECH's Board of Directors.[3]

26.     John Schilling (Partner at TPG Capital) conducts Exactech Board of Directors business from his residence in Lake Forest, Illinois.

27.     TPG is directly involved in making decisions, controlling, and directing the activities of EXACTECH. By and through TPG CAPITAL, TPG, INC. provided input on deciding whether or not to recall the defective OPTETRAK knee device.

28.     This products liability lawsuit seeks compensatory damages on behalf of LINDA I. WHITE, who was implanted with total knee replacement systems known as the OPTETRAK that the Defendants, MIDWAY MEDICAL PRODUCTS, INC., EXACTECH, INC., EXACTECH USA, INC. and TPG, INC., designed, manufactured, marketed, packaged, distributed, and sold.

## ANATOMY OF A KNEE

29.     From a lay perspective, the human knee facilitates much of the movement required for locomotion, whether walking, running or jumping. The knee is a hinge joint where the ends of the thigh bone and the shin bone move principally in one plane like a hinge. The actual function of this anatomy is much more complex, as the bones are not directly attached to each other but are held together by rope-like ligaments. Movement is created by the action of muscles and tendons.

---

[3] https://www.exac.com/about-us/leadership/ (accessed June 7, 2022)

The joint hinge bears weight directly on its principal articulating surfaces which are made of specialized cartilage.

30. The knee is composed of three functional bones: the femur (thighbone), tibia (shinbone) and patella (kneecap). The femur is the longest and strongest bone in the body. The distal end (the lower end farthest from the center of the body) forms the upper part of the knee. This distal end has double rounded knob-like projections (the "condyles") with a groove in between. One condyle is on the medial (inside) of the knee, and the other on the lateral (outside) of the knee. These rounded condyles articulate (move) along the top of the tibia while the back of the patella (kneecap) moves along the groove between the condyles.

31. The femur and the tibia meet to form a pivotal hinge joint, permitting flexion (decrease of the joint angle) and extension (increase of the joint angle or straightening) of the leg as well as slight medial and lateral rotation.

32. The knee joint is protected in front by the patella (kneecap). The patella is a mostly flat, oval shaped, sesamoid bone tapered toward the distal end. Sesamoid means the bone is contained within a tendon in this case, the patellar tendon. The posterior or back side, of the patella slides between the condyles of the femur and articulates with the femur.

33. The knee joint is cushioned by articular cartilage that covers the ends of the tibia and femur as well as the underside of the patella.

**TOTAL KNEE REPLACEMENT**

34. The knee joint is cushioned by articular cartilage that covers the ends of the tibia and femur as well as the underside of the patella.

35. Knee replacement is the process of replacing the joint surfaces with artificial materials. The knee replacement redistributes weight and takes away the tissue causing

inflammation and thus reduces pain. Replacement requires a mechanical connection between the bones and the implant components.

36.     The main goals of a knee replacement are: (1) to relieve pain caused by arthritis, (2) to restore range of motion, or the degrees of knee flexion and extension, and (3) to correct any varus and valgus misalignment.

37.     The TKA procedure is done by separating the muscles and ligaments around the knee to expose the inside of the joint. The ends of the femur and tibia are removed or reduced as is often the underside of the patella.

38.     In TKR surgery, the surface of the femur is replaced with a contoured metal component designed to fit the curve of the bone. The surface of the tibia is typically replaced with a flat metal component and a smooth plastic component that serves as a replacement for cartilage. The undersurface of the patella may also be replaced with an implant made of plastic, or a combination of metal and plastic.

39.     TKR is one of the most successful surgeries of modern medicine.

## THE EXACTECH OPTETRAK TOTAL KNEE REPLACEMENT SYSTEM

40.     Exactech and Hospital for Special Surgery began collaborating on knee implant development in 1992, which culminated in Exactech's licensure of Hospital for Special Surgery technologies. The resulting Optetrak comprehensive knee system has been marketed by Exactech since 1995 and represents approximately 45 percent of the company's sales. For a multitude of patients in more than 30 countries around the world, Optetrak has demonstrated excellent long-term clinical results[4]

---

[4] https://content.exac.com/wp-content/uploads/sites/3/2017/02/2009-02-23-press_release.pdf

41.     In or around 1994, EXACTECH released and began to distribute and sell the OPTETRAK system through sales representatives and independent distributors.

42.     When the OPTETRAK system was launched in 1994, Brighton Partner's, Inc. was the sole supplier of the polyethylene inserts or bearing surfaces for the OPTETRAK.

43.     EXACTECH subsequently acquired Brighton Partner's, Inc. in 2010.

44.     The OPTETRAK total knee replacement is a Class II device and the Food & Drug Administration (hereinafter referred to as "FDA") cleared it for sale via the 510(k) process of substantial equivalence.

45.     The FDA does not require a 510(k) medical device to go through the rigors of a clinical study.

46.     The FDA determined that the Exactech OPTETRAK knees systems were substantially equivalent to devices that were already on the market on February 9, 1995 (K932690), March 10, 1995 (K933494), October 1, 2004 (K040889), February 13, 2004 (K033883), October 11, 2013 (K132161), and January 11, 2010 (K093360).

47.     In an EXACTECH document (712-25-40 REV A) entitled, "Optetrak Logic Design Rationale", EXACTECH claimed that the OPTETRAK was "Developed from original technology licensed from the Hospital for Special Surgery (HSS) in New York, one of the leading orthopaedic research institutions…"

48.     EXACTECH claims "[t]he Company's Optetrak knee system is a modular system designed to improve patellar tracking, reduce articular contact stress that leads to implant failure, and provide good range of motion. Laboratory testing performed by the Company and clinical testing performed by the Company's design team members has demonstrated that the system

7

produces substantially lower articular contact stress and improved patellar tracking compared to other knee implant systems."[5]

49.     EXACTECH claimed in an OPTETRAK promotional brochure, "Exactech's proprietary net compression molded polyethylene inserts are designed to minimize surface damage and wear, and ultimately improve the longevity of the knee prosthesis."[6]

50.     EXACTECH claimed in an OPTETRAK promotional brochure, "Reproducible Results, Case after Case."[7]

51.     As early as 2008, EXACTECH knew that the Australian Orthopaedic Association National Joint Registry reported a higher-than-expected revision rate of the OPTETRAK device.

52.     In a matter involving a component of the OPTETRAK system, but unrelated to this matter, EXACTECH's Memorandum of Law In Support of Exactech, Inc.'s Motion to Dismiss, EXACTECH argued to that Court that "Exactech is only required to investigate reports of revision surgeries, and, after the investigation, submit a report to the FDA if it determines that there was a device malfunction."[8]

53.     EXACTECH also argued, "Every revision surgery does not necessarily trigger a reporting obligation."[9]

54.     In June of 2012, an article was published in Orthopaedics & Traumatology: Surgery & Research entitled, "Poor results of the Optetrak™ cemented posterior stabilized knee prosthesis after a mean 25-month follow-up: analysis of 110 prostheses."[10]

---

[5]https://www.sec.gov/Archives/edgar/data/913165/000095017001000366/0000950170-01-000366-0001.txt
[6] https://www.exac.com/product/logic-main-brochure/
[7] https://www.exacdev.com/wp-content/uploads/2019/05/712-25-16-Rev-C-Logic_Porous_Prod_Sht.pdf
[8] *United States ex rel. Wallace v. Exactech, Inc,* No. 2:18-cv-01010-LSC, Document 38 Filed 12/20/2019 (N.D. Ala.) at 11.
[9] *Id.* at 22.
[10] https://www.sciencedirect.com/science/article/pii/S1877056812000758

55.     At some point before the Australia prohibited EXACTECH from selling the OPTETRAK, Statistics Solutions in Clearwater, Florida was engaged by EXACTECH. Statistics Solutions subsequently published a document "Helping a Medical Device Manufacturer Maintain Its Right-to-Sell."[11] The document created by Serial Solutions noted, "Exactech was also able to provide our team with internally-collected data from Exactech knee database that we then used to run Kaplan-Meier survival analysis to corroborate our methodological findings"

56.     In April of 2021, an article was published in the Journal of Knee Surgery entitled, "Early Aseptic Loosening with Increased Presence and Severity of Backside Burnishing in the Optetrak Logic Posterior-Stabilized Total Knee Arthroplasty Femoral Component."[12] The authors noted, "The use of the Optetrak Logic PS TKA femoral component was associated with early aseptic loosening and increased presence and severity of backside burnishing with early cement-implant interface debonding compared with other commercially available types of PS TKA femoral components. The earlier failure rate with this implant is of concern." The authors of this article are from Hospital for Special Surgery.

57.     The 2021 Australian Orthopaedic Association National Joint Replacement Registry (AOANJRR) identified multiple OPTETRAK systems or variations of the OPTETRAK as having a "Higher than Anticipated Rate of Revision." At 10 years, the Optetrak-CR (ctd)/Optetrak (ctd) revision rate was 11.4 (6.3, 20.2); the Optetrak-PS/Optetrak was 11.0 (9.7, 12.4); Optetrak-PS/Optetrak RBK 8.6 (6.9, 10.7); Optetrak-PS/Optetrak-PS was 24.4 (14.9, 38.5). Whereas, all other total knee devices have a revision rate of 4.8 (4.7, 4.9) in the 2021 AOANJRR.

58.     On or around August 30, 2011, Exactech initiated a recall of the OPTETRAK. On or around October 4, 2021, the FDA posted the OPTETRAK recall in the FDA's recall system.

---

[11] https://www.statisticssolutions.com/wp-content/uploads/2016/02/Case_Studies_Exactech.pdf
[12] https://www.thieme-connect.com/products/ejournals/abstract/10.1055/s-0041-1729549

59.     On or around February of 2022, EXACTECH updated their recall of the OPTETRAK system and began to notify patients and surgeons of the recall.

60.     On February 2, 2022, EXACTECH published a document aimed at patients entitled, "FREQUENTLY ASKED QUESTIONS KNEE AND ANKLE RECALL." This document noted: The TKR ("total knee replacement") manufactured by Exactech and packaged in non-conforming bags may be associated with the following risks: 1. Statistically significant higher and earlier than expected revision rates in Optetrak TKR 2. Increased risk of polyethylene (plastic) wear, and 3. Potential development of osteolysis (bone loss) in first-generation Optetrak TKR 4. The reasons for revision potentially associated with polyethylene wear (e.g., loosening, lysis, pain) were increased three- to seven-fold in the Optetrak TKR when compared to other TKRs and may be related to the non-conforming packaging. Polyethylene wear can initiate a variety of clinical issues to include device loosening, device fracture, mechanical failure, pain, bone loss or recurrent swelling in the affected area.

61.     The FDA has determined the cause of the defect in the OPTETRAK knee system to be "Process control."[13]

62.     EXACTECH provided a letter for surgeons or facilities to use to inform patients of the OPTETRAK recall that states, "Exactech has found that the tibial plastic insert in the out of specification bag can wear out earlier than expected in some patients. Premature wear of the plastic insert of your knee replacement can lead to the need for additional surgery (also known as revision surgery). In those cases where the plastic has worn out earlier than expected or has been damaged, we will evaluate your knee replacement and decide whether additional treatment is needed."

---

[13] https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfRES/res.cfm?id=189267
https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfRES/res.cfm?id=189266
https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfRES/res.cfm?id=189261
https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfRES/res.cfm?id=189260
https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfRES/res.cfm?id=189259
https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfRES/res.cfm?id=189015

63. The OPTETRAK knee implant design, manufacturing process, and packaging leads the OPTETRAK to be more prone to failure due to the migration, osteolysis, polyethylene wear, and fracture when implanted into a human being than knee devices manufactured by other companies.

64. LINDA I. WHITE did not know that the devices were defective until on or after February 2, 2022.

## LINDA WHITE'S OPTETRAK KNEE SYSTEM IMPLANTS AND REMOVALS

65. Before June 13, 2012, LINDA I. WHITE began medical treatment for left and right knee arthritis with Michael Gernant, M.D.

66. Before June 13, 2012, Michael Gernant, M.D., an orthopaedic surgeon licensed to practice medicine in the State of Illinois, through his experience and training in the practice of medicine, indicated LINDA I. WHITE met the criteria for a total knee replacement on her left and right knees.

67. On or about June 13, 2012, Michael Gernant, M.D., implanted the EXACTECH OPTETRAK into the left knee and right knees of LINDA I. WHITE at Galesburg Cottage Hospital 695 North Kellogg Street, Galesburg, Illinois.

68. At all relevant times and before the implantation of the OPTETRAK in the Plaintiff LINDA I. WHITE, MIDWAY MEDICAL and EXACTECH, knew that the OPTETRAK was defective and harmful to consumers.

69. At all relevant times and before the implantation of the OPTETRAK in LINDA I. WHITE, MIDWAY MEDICAL and EXACTECH had regular and frequent communications from surgeons who had implanted the OPTETRAK, regarding failures and complications of the OPTETRAK.

70.    On or about July 27, 2015, LINDA I. WHITE underwent surgery to remove the OPTETRAK.

71.    On or about July 27, 2015, Gregory Schierer, M.D., an orthopaedic surgeon licensed to practice medicine in the State of Illinois, removed the right side OPTETRAK implant from LINDA I. WHITE and replaced it with another OPTETRAK implant at Galesburg Cottage Hospital 695 North Kellogg Street, Galesburg, Illinois.

72.    Had Gregory Schierer, M.D. known that the OPTETRAK had an unusually high failure rate due to migration, loosening, polyethylene degradation, wear, and osteolysis, he would have used a different device in LINDA I. WHITE's right knee revision surgery on July 27, 2015.

73.    MIDWAY MEDICAL knew that the OTETRAK failed on July 27, 2015 and provided another OPTETRAK as a replacement device for LINDA I. WHITE's failed OPTETRAK.

74.    On or about January 21, 2019, LINDA I. WHITE underwent surgery to remove the OPTETRAK that was implanted in July 2015.

75.    On or about January 21, 2019, Gregory Schierer, M.D., an orthopaedic surgeon licensed to practice medicine in the State of Illinois, removed the right side OPTETRAK implant from LINDA I. WHITE and replaced it with another prosthesis at Galesburg Cottage Hospital 695 North Kellogg Street, Galesburg, Illinois.

76.    On or about May 13, 2019, LINDA I. WHITE underwent surgery to remove the OPTETRAK that had been implanted in her left knee.

77.    On or about May 13, 2019, Gregory Schierer, M.D., an orthopaedic surgeon licensed to practice medicine in the State of Illinois, removed the left side OPTETRAK implant

from LINDA I. WHITE and replaced it with another prosthesis at Galesburg Cottage Hospital 695 North Kellogg Street, Galesburg, Illinois.

78.     On or about January 20, 2020, LINDA I. WHITE underwent surgery to remove the OPTETRAK in her left knee.

79.     On or about January 20, 2020, Gregory Schierer, M.D., an orthopaedic surgeon licensed to practice medicine in the State of Illinois, removed the left side OPTETRAK implant from LINDA I. WHITE and replaced it with another prosthesis at Galesburg Cottage Hospital 695 North Kellogg Street, Galesburg, Illinois.

80.     Michael Gernant, M.D. and Gregory Schierer, M.D. would not have used the OPTETRAK system in LINDA I. WHITE had he been told that the OPTETRAK had/has a propensity to fail at a higher rate than other available knee devices.

### COUNT I – STRICT PRODUCT LIABILITY AGAINST EXACTECH AND TPG

LINDA I. WHITE incorporates by reference paragraphs 1 through 80 as if fully set forth herein.

81.     EXACTECH had a duty to place into the stream of commerce, manufacture, package, distribute, market, promote, and sell the OPTETRAK that was not defective and unreasonably dangerous when put to the use for which it was designed, manufactured, packaged, distributed, marketed, and sold.

82.     EXACTECH did in fact sell, distribute, supply, and/or promote the OPTETRAK to LINDA I. WHITE and her implanting physician.

83.     EXACTECH expected the OPTETRAK it was selling, distributing, supplying, manufacturing, packaging, and/or promoting to reach, and it did in fact reach, implanting

physicians and consumers in Cook County, Illinois and the State of Illinois, including Plaintiff and her implanting physicians, without substantial change in the condition.

84.     At the time the OPTETRAK left the possession of EXACTECH and the time OPTETRAK entered the stream of commerce, the OPTETRAK was in an unreasonably dangerous and defective condition.  These defects include but are not limited to the following:

(a)     The OPTETRAK was not reasonably safe as intended to be used;

(b)     The OPTETRAK had an inadequate design for the purposes of knee replacement;

(c)     The OPTETRAK contained unreasonably dangerous design defects and manufacturing defects, including an inherently unstable, defective design, and defective manufacturing and packaging process, which resulted in an unreasonably high probability of early failure;

(d)     The OPTETRAK's unstable, defective design, defective manufacturing process, and defective packaging process resulted in a knee prosthesis, which had risks which exceeded the benefits of the medical device;

(e)     The OPTETRAK's unstable defective design, manufacturing and packaging process resulted in a knee prosthesis which was more dangerous than the ordinary consumer would expect;

(f)     The OPTETRAK failed to perform in a manner reasonably expected in light of its nature and intended function, and subjected the PLAINTIFF to an unreasonable risk of harm beyond that contemplated by an ordinary person;

(g)     The OPTETRAK was insufficiently tested; and

(h)     The warning to PLAINTIFF and PLAINTIFF's implanting physicians about the dangers the OPTETRAK posed to consumers including PLAINTIFF were inadequate.  The inadequacy of EXACTECH's warnings include, but are not limited to, the following:

i.     Insufficient to alert PLAINTIFF and Plaintiff's physicians as to the risk of adverse events and/or reactions associated with the OPTETRAK, subjecting PLAINTIFF to risks which exceeded the benefits of the OPTETRAK;

ii.     Contained misleading warnings emphasizing the efficacy of the OPTETRAK while downplaying the risks associated with it, thereby making use of the OPTETRAK more dangerous than the ordinary consumer would expect;

14

  iii. Contained insufficient and/or incorrect warnings to alert consumers, including PLAINTIFF, through their prescribing physicians regarding the risk, scope, duration, and severity of the adverse reactions associated with the OPTETRAK;

  iv. Did not disclose that the OPTETRAK was inadequately tested;

  v. Did not disclose that the OPTETRAK packaging process was inadequately validated;

  vi. Failed to convey adequate post-marketing warnings regarding the risk, severity, scope, and/or duration of the dangers posed by the OPTETRAK; and

  vii. Failed to contain instructions sufficient to alert consumers to the dangers they posed, and to give them the information necessary to avoid or mitigate those dangers.

85. LINDA I. WHITE used the OPTETRAK for its intended purpose, i.e., knee replacement.

86. LINDA I. WHITE could not have discovered any defect in the OPTETRAK through the exercise of due care.

87. EXACTECH as designer, manufacturer, marketer, distributor, and seller of medical devices are held to the level of knowledge of an expert in their field.

88. LINDA I. WHITE and the implanting physician did not have substantially the same knowledge as the designer, manufacturer, distributor, or seller: EXACTECH.

89. As a direct and proximate result of one or more of the foregoing wrongful acts or omissions by EXACTECH, LINDA I. WHITE was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body and mind; suffered device-related complications including but not limited to additional surgeries, pain and lost income; to expend money for medical care in the past and in the future; furthermore, LINDA I. WHITE was unable to and will in the future be unable to attend to her normal affairs and duties for an indefinite period of time and has sustained and will continue to sustain a substantial loss of income.

WHEREFORE, LINDA I. WHITE prays for judgment against Defendant, EXACTECH, INC., in a sum in excess of jurisdictional limits of this Court, together with interests and costs of this action.

## COUNT II – NEGLIGENCE AGAINST EXACTECH

90.    Plaintiffs incorporate by reference paragraphs 1 through 85 as if fully set forth herein.

91.    At all times relevant, it was the duty of EXACTECH to exercise due care in designing, testing, manufacturing, distributing, marketing, packaging, promoting, and selling of the OPTETRAK such that it would be reasonably safe for its intended use.

92.    EXACTECH's negligence in the designing, testing, manufacturing, packaging, distributing, marketing, promoting, and selling of the OPTETRAK.

    (a)    OPTETRAK was negligently designed, manufactured, and packaged causing the device to prematurely wear and fracture;

    (b)    EXACTECH's surgical protocol which, among other things, should provide a surgeon who possesses the requisite degree surgical skill the information necessary for proper use of the device. Even after a proper review of all OPTETRAK surgical technique literature, other EXACTECH literature, and receiving proper training during residency programs, a surgeon of standard competence and experience still lacks the requisite information necessary for safe and effective use of the OPTETRAK;

    (c)    EXACTECH committed manufacturing and packaging errors, including but not limited to non-conforming vacuum bags without the EVOH oxygen barrier layer and size tolerances out of specification and not within industry acceptable standards;

    (d)    EXACTECH, in advertising, marketing, promoting, packaging, and selling the OPTETRAK, negligently misrepresented material facts regarding the OPTETRAK's safety, efficacy, and fitness for human use by claiming the OPTETRAK was fit for its intended purpose when, in fact, it was not;

    (e)    EXACTECH, in advertising, marketing, promoting, packaging, and selling the OPTETRAK, negligently misrepresented material facts regarding the OPTETRAK's safety, efficacy, and fitness for human use by claiming the

OPTETRAK had been adequately and reliably tested when, in fact, it was not;

    (f)    EXACTECH, in advertising, marketing, promoting, packaging, and selling the OPTETRAK, negligently misrepresented material facts regarding the OPTETRAK's safety, efficacy, and fitness for human use by claiming the OPTETRAK was safe and effective and was appropriate for use by human beings when, in fact, it was not;

    (g)    EXACTECH, in advertising, marketing, promoting, packaging, and selling the OPTETRAK, negligently misrepresented material facts regarding the OPTETRAK's safety, efficacy, and fitness for human use by claiming the risk of serious adverse events and/or effects from the OPTETRAK was comparable to that of other knee replacement systems, when in fact it was not; and

    (h)    EXACTECH, in advertising, marketing, promoting, packaging, and selling the OPTETRAK, negligently misrepresented material facts regarding the OPTETRAK's safety, efficacy, and fitness for human use by claiming the OPTETRAK had not caused or contributed to serious adverse events and/or effects requiring the premature explants of the device when, in fact, it had.

93.    EXACTECH knew or had reason to know that LINDA I. WHITE, as a member of the general public for whose use the OPTETRAK was placed into interstate commerce, would be likely to use the OPTETRAK in a manner described in this Complaint.

94.    EXACTECH knew or reasonably should have known of the danger associated with the manner and circumstances of LINDA I. WHITE's foreseeable use of the OPTETRAK, which danger would not be obvious to the general public.

95.    As a direct and proximate result of one or more of the foregoing wrongful acts or omissions by EXACTECH, LINDA I. WHITE was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body and mind; suffered device-related complications including but not limited to additional surgeries and procedures; to expend money for medical care in the past and in the future; furthermore, LINDA I. WHITE was unable to and will in the future be unable to attend to her normal affairs and duties for an indefinite period of time and has sustained and will continue to sustain a substantial loss of income.

WHEREFORE, LINDA I. WHITE prays for judgment against defendant EXACTECH, INC., in a sum in excess of jurisdictional limits of this Court, together with interests and costs of this action.

## COUNT III – BREACH OF WARRANTY AGAINST EXACTECH

96.     Plaintiffs incorporate by reference paragraphs 1 through 95 as if fully set forth herein.

97.     LINDA I. WHITE currently is not in possession of any document relating to representations, warnings, and/or communications made by defendants in this action. LINDA I. WHITE reserves the right to present evidence in support of the claim which is not presently in her possession, but which will be discovered in the ordinary course of litigation. Such evidence may include, but is not necessarily limited to: Instruction for Use Manuals; all written material or information provided on and/or within any and all packaging associated with LINDA I. WHITE's device; manufacturer's labels, package inserts; Adverse Event Reports; recall notices, registry data, clinical trial data; medical literature; medical research findings and opinions; medical publications; advertisements; sales and promotional materials; internal memoranda, emails, communications and databases; sales, prescription and adverse event report databases; and communications from EXACTECH in this action, including EXACTECH's employees, officers, directors, agents, representatives, contractors and business associates, to the public, medical community, Plaintiff's implanting surgeon and LINDA I. WHITE. Upon information, knowledge and belief, LINDA I. WHITE alleges the documents, instruments and/or evidence stated above are in the possession of EXACTECH.

98.     At the time EXACTECH packaged, marketed, distributed and/or sold the OPTETRAK, it knew that the knee device was intended for human use.

99.     At the time EXACTECH packaged, marketed, distributed and/or sold the OPTETRAK, LINDA I. WHITE was a foreseeable user of the device.

100.    At the time EXACTECH packaged, marketed, distributed and/or sold the OPTETRAK, it expressly and/or impliedly warranted that the knee, including all of its component parts, was safe and merchantable for their intended use.

101.    LINDA I. WHITE and her implanting surgeon reasonably relied upon the representations that the OPTETRAK was of merchantable quality and safe for their intended uses.

102.    LINDA I. WHITE used the OPTETRAK for its intended purpose.

103.    Contrary to the express and implied warranties, at the time EXACTECH packaged, marketed, distributed and/or sold the OPTETRAK, it was not of merchantable quality or safe for their intended use as described above.

104.    As a direct and proximate result of one or more of the foregoing wrongful acts or omissions by EXACTECH, LINDA I. WHITE was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body and mind; suffered device-related complications including but not limited to additional surgeries, dislocations, and infection; to expend money for medical care in the past and in the future; furthermore, LINDA I. WHITE was unable to and will in the future be unable to attend to her normal affairs and duties for an indefinite period of time and has sustained and will continue to sustain a substantial loss of income.

WHEREFORE, LINDA I. WHITE, prays for judgment against defendant EXACTECH, INC., in a sum in excess of jurisdictional limits of this Court, together with interests and costs of this action.

19

## COUNT IV – STRICT PRODUCT LIABILITY AGAINST MIDWAY MEDICAL

105.    LINDA I. WHITE incorporates by reference paragraphs 1 through 104 as if fully set forth herein.

106.    David C. Ozzello, owner, president, and agent of MIDWAY MEDICAL had a financial interest in EXACTECH.

107.    MIDWAY MEDICAL had a duty to place into the stream of commerce, distribute, market, promote, and sell the OPTETRAK that was not defective or unreasonably dangerous when put to the use for which it was designed, manufactured, packaged, distributed, marketed, and sold.

108.    MIDWAY MEDICAL did in fact sell, distribute, supply, deliver, and/or promote the OPTETRAK to LINDA I. WHITE and her implanting physician.

109.    At all times material and before the implantation of the OPTETRAK in the PLAINTIFF, MIDWAY MEDICAL actively cultivated surgeon relationships through knowledgeable sales representatives specializing in medical devices.

110.    At all times material and before the implantation of the OPTETRAK in the PLAINTIFF, MIDWAY MEDICAL communicated with surgeons, healthcare professionals and hospitals regarding potential safety concerns, incidents or issues regarding EXACTECH, INC medical devices.

111.    At all times material and before the implantation of the OPTETRAK in the PLAINTIFF, MIDWAY MEDICAL disseminated information to surgeons that was created and prepared by EXACTECH, INC. about the OPTETRAK, displayed OPTETRAK samples to hospitals and physicians and supplied hospitals with EXACTECHS products, such as the OPTETRAK to surgeons on the date of surgery.

112.     At all times material and before the implantation of the OPTETRAK in the PLAINTIFF, MIDWAY MEDICAL had regular communications with the implanting surgeons who utilized the OPTETRAK, including the surgeon who implanted the OPTETRAK in the PLAINTIFF, such that MIDWAY MEDICAL was in a unique position to provide EXACTECH with warnings relative to the alleged defects in the OPTETRAK and did in fact provide EXACTECH with such warnings based upon complaints and comments MIDWAY MEDICAL received from the implanting surgeons.

113.     MIDWAY MEDICAL is paid by EXACTECH for any device a MIDWAY MEDICAL representative sells for implantation in a patient.

114.     MIDWAY MEDICAL was paid directly by EXACTECH, INC. for the OPTETRAK device that was used by Dr. Goldstein for implantation in PLAINTIFF's body.

115.     Upon information and belief, a MIDWAY MEDICAL sales representative personally delivered the OPTETRAK devices that were implanted in LINDA I. WHITE to Dr. Michael Gernant and Dr. Gregory Schierer and was present in the operating room during the implantation and removal surgeries.

116.     According to 21 C.F.R. § 803.1, the distributor of a medical device must maintain records (files) of incidents of injury that a device may have caused or contributed.

117.     At all times relevant to this matter, MIDWAY MEDICAL had a duty under 21 C.F.R. § 803.1 to track and maintain records of any incidents of injury that the OPTETRAK may have caused or contributed.

118.     According to 21 C.F.R. § 803.18, the distributor of a medical device must establish and maintain device complaint records (files). A distributor's records must contain any incident information, including any written, electronic, or oral communication, either received or generated

by it, that alleges deficiencies related to the identity (e.g., labeling), quality, durability, reliability, safety, effectiveness, or performance of a medical device. A distributor must also maintain information about its evaluation of the allegations, if any, in the incident record. The distributor must clearly identify the records as device incident records and file the records by device name.

119. At all times relevant to this matter, MIDWAY MEDICAL had a duty under 21 C.F.R. § 803.18 to track and maintain OPTETRAK device complaint records that include incident information potentially related to the safety and effectiveness of a medical device it distributes.

120. At all times material and before and after the implantations of the OPTETRAK in LINDA I. WHITE, MIDWAY MEDICAL had actual knowledge of the defects in the OPTETRAK as alleged herein.

121. MIDWAY MEDICAL expected the OPTETRAK it was selling, delivering, and distributing to reach, and it did in fact reach, implanting physicians and consumers in Cook County, Illinois and the State of Illinois, including LINDA I. WHITE and her implanting physicians, without substantial change in the condition.

122. At the time the OPTETRAK left the possession of MIDWAY MEDICAL, and the time OPTETRAK entered the stream of commerce, the OPTETRAK was in an unreasonably dangerous and defective condition. These defects, of which MIDWAY MEDICAL had actual knowledge, include but are not limited to the following:

    (a)    OPTETRAK was negligently designed, manufactured, and packaged causing it to prematurely wear and fracture;

    (b)    EXACTECH's surgical protocol which, among other things, should provide a surgeon who possesses the requisite degree surgical skill the information necessary for proper use of the device. Even after a proper review of all OPTETRAK surgical technique literature, other EXACTECH literature, and receiving proper training during residency programs, a surgeon of standard competence and experience still lacks the requisite information necessary for safe and effective use of the OPTETRAK;

(c)    EXACTECH committed manufacturing and packaging errors, including but not limited to non-conforming vacuum bags without the EVOH oxygen barrier layer and size tolerances out of specification and not within industry acceptable standards;

(d)    EXACTECH, in advertising, marketing, promoting, packaging, and selling the OPTETRAK, negligently misrepresented material facts regarding the OPTETRAK's safety, efficacy, and fitness for human use by claiming the OPTETRAK was fit for its intended purpose when, in fact, it was not;

(e)    EXACTECH, in advertising, marketing, promoting, packaging, and selling the OPTETRAK, negligently misrepresented material facts regarding the OPTETRAK's safety, efficacy, and fitness for human use by claiming the OPTETRAK had been adequately and reliably tested when, in fact, it was not;

(f)    EXACTECH, in advertising, marketing, promoting, packaging, and selling the OPTETRAK, negligently misrepresented material facts regarding the OPTETRAK's safety, efficacy, and fitness for human use by claiming the OPTETRAK was safe and effective and was appropriate for use by human beings when, in fact, it was not;

(g)    EXACTECH, in advertising, marketing, promoting, packaging, and selling the OPTETRAK, negligently misrepresented material facts regarding the OPTETRAK's safety, efficacy, and fitness for human use by claiming the risk of serious adverse events and/or effects from the OPTETRAK was comparable to that of other knee replacement systems, when in fact it was not; and

(h)    EXACTECH, in advertising, marketing, promoting, packaging, and selling the OPTETRAK, negligently misrepresented material facts regarding the OPTETRAK's safety, efficacy, and fitness for human use by claiming the OPTETRAK had not caused or contributed to serious adverse events and/or effects requiring the premature explants of the device when, in fact, it had.

123.    LINDA I. WHITE used the OPTETRAK for its intended purpose, i.e. knee replacement.

124.    LINDA I. WHITE could not have discovered any defect in the OPTETRAK through the exercise of due care.

125.    MIDWAY MEDICAL, as a seller, distributor, supplier, deliverer, and/or promoter of medical devices, is held to the level of knowledge of an expert in their field.

126. LINDA I. WHITE and the implanting physician did not have substantially the same knowledge as the seller, distributor, supplier, deliverer, and/or promoter: MIDWAY MEDICAL

127. As a direct and proximate result of one or more of the foregoing wrongful acts or omissions by MIDWAY MEDICAL, the PLAINTIFF was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body and mind; suffered device-related complications including but not limited to additional surgeries, pain, loss of a normal life and loss of income; to expend money for medical care in the past and in the future; furthermore, LINDA I. WHITE was unable to and will in the future be unable to attend to her normal affairs and duties for an indefinite period of time and has sustained and will continue to sustain a substantial loss of income.

WHEREFORE, LINDA I. WHITE, prays for judgment against defendant MIDWAY MEDICAL PRODUCTS, INC., in a sum in excess of jurisdictional limits of this Court, together with interests and costs of this action.

## COUNT V – NEGLIGENCE AGAINST MIDWAY MEDICAL

128. LINDA I. WHITE incorporates by reference paragraphs 1 through 127 as if fully set forth herein.

129. At all relevant times, MIDWAY MEDICAL had a duty to use reasonable care in placing into the stream of commerce, distributing, marketing, promoting, and selling OPTETRAK knee systems which were not defective or unreasonably dangerous when put to the use for which it was designed, manufactured, distributed, marketed, and sold.

130. MIDWAY MEDICAL knew or should have known that LINDA I. WHITE, as a member of the general public for whose use the OPTETRAK knee device was placed into commerce, would be likely to use the device in the manner described in this Complaint.

131.    MIDWAY MEDICAL knew or had reason to know of the danger associated with the manner and circumstances of LINDA I. WHITE's foreseeable use of the OPTETRAK, which danger would not be obvious to the general public.

132.    That notwithstanding the aforesaid duty, MIDWAY MEDICAL negligently and carelessly committed one or more of the following acts or omissions:

a)    Distributed, marketed, packaged, and sold the device at issue which it knew, or through the exercise of reasonable diligence and care should have known, that the device was prone to premature failure, fracture, wear, or adverse surgical outcome;

b)    Negligently and carelessly failed to adequately and sufficiently warn Dr. Michael Gernant, Dr. Gregory Schierer, and LINDA I. WHITE before the date of LINDA I. WHITE's surgeries on or about June 13, 2012, July 27, 2015, January 21, 2019, and May 13, 2019, that the OPTETRAK devices were prone to premature polyethylene wear, fracture, failure, tibial migration, or adverse surgical outcomes;

c)    Negligently and carelessly ignored the known design, manufacturing, and packaging flaws in the in the OPTETRAK knee device such that there was an unreasonably high likelihood that the OPTETRAK knee device would prematurely wear, fracture, or fail;

d)    Failed to perform due diligence in monitoring reports of premature wear, fractures, failures, tibial migration or adverse surgical outcomes before marketing, distributing, and selling the device at issue in this case; and

e)    Otherwise negligently and carelessly engaged in distributing, marketing, promoting, and selling OPTETRAK knee devices.

133.    As a direct and proximate result of one or more of the foregoing wrongful acts or omissions, LINDA I. WHITE was harmed by MIDWAY MEDICAL's breach of duty when the OPTETRAK knee devices prematurely wearing, fracturing, migrating, and causing her severe injuries, current and future pain and suffering, current and future medical expenses, and future inability to attend to her normal affairs or enjoy a normal quality of life for an indefinite period of time.

WHEREFORE, LINDA I. WHITE prays for judgment against defendant MIDWAY MEDICAL PRODUCTS, INC, in a sum in excess of jurisdictional limits of this Court, together with interests and costs of this action.

**JURY DEMAND**

LINDA I WHITE, HEREIN DEMANDS A TRIAL BY JURY.

Dated: June 13, 2022

RESPECTFULLY SUBMITTED,

LINDA I. WHITE

MEYERS & FLOWERS, LLC

By: /s/Peter J. Flowers_____
Peter J. Flowers
One of the Attorneys for Plaintiff

Peter J. Flowers, Esq. (#56079)
MEYERS & FLOWERS, LLC
3 North Second Street, Suite 300
St. Charles, IL 60174
Ph.  (630) 232-6333
Fax (630) 845-8982
pjf@meyers-flowers.com

Chicago Office:
225 W. Wacker, Suite 1515
Chicago, IL  60606

Il Law Division initial Case Management Dates will be heard via ZOOM.
or more information and Zoom Meeting IDs go to https://www.cookcountycourt.org/HOME/Zoom-Links/Agg4906_SelectTab/12
emote Court date: 8/16/2022 10:00 AM

FILED
6/13/2022 3:48 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022L005275
Calendar, D
18269726

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| Summons - Alias Summons | (08/01/18) CCG 0001 A |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Linda I. White,

(Name all parties)

v.

Midway Medical Products, Inc., Exactech, Inc.,
Exactech U.S., Inc., TPG Capital and TPG, Inc.

Case No. _____

### ✓ SUMMONS ☐ ALIAS SUMMONS

To each Defendant:  Midway Medical Products, Inc., c/o David C. Ozzello, President & Agent,
626 Fox Glen Drive, St. Charles, IL 60174

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty (30) days after service of this Summons**, not counting the day of service.  To file your answer or appearance you need access to the internet.  Please visit www.cookcountyclerkofcourt.org to initiate this process.  Kiosks with internet access are available at all Clerk's Office locations.  Please refer to the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service.  If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**

**cookcountyclerkofcourt.org**

Page 1 of 3

**Summons - Alias Summons**                              (08/01/18) CCG 0001 B

E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp, or talk with your local circuit clerk's office.

Atty. No.: 56079

Atty Name: Peter J. Flowers

Atty. for: Plaintiff

Address: 3 N. Second Street, Suite 300

City: St. Charles

State: IL    Zip: 60174

Telephone: 630-232-6333

Primary Email: pjf@meyers-flowers.com

Witness: _____

6/13/2022 3:48 PM IRIS Y. MARTINEZ

DOROTHY BROWN, Clerk of Court

Date of Service: _____
(To be inserted by officer on copy left with Defendant or other person):

## CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

Richard J Daley Center
50 W Washington
Chicago, IL 60602

District 2 - Skokie
5600 Old Orchard Rd
Skokie, IL 60077

District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

District 4 - Maywood
1500 Maybrook Ave
Maywood, IL 60153

District 5 - Bridgeview
10220 S 76th Ave
Bridgeview, IL 60455

District 6 - Markham
16501 S Kedzie Pkwy
Markham, IL 60428

Domestic Violence Court
555 W Harrison
Chicago, IL 60607

Juvenile Center Building
2245 W Ogden Ave, Rm 13
Chicago, IL 60602

Criminal Court Building
2650 S California Ave, Rm 526
Chicago, IL 60608

### Daley Center Divisions/Departments

Civil Division
Richard J Daley Center
50 W Washington, Rm 601
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Chancery Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Domestic Relations Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Civil Appeals
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Criminal Department
Richard J Daley Center
50 W Washington, Rm 1006
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

County Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Probate Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Law Division
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Traffic Division
Richard J Daley Center
50 W Washington, Lower Level
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

earing Date: No hearing scheduled
ocation: <<CourtRoomNumber>>
udge: Calendar, D

AFFIDAVIT OF SERVICE

**FILED**
7/14/2022 10:34 AM

| Case: 2022-L-005275 | Court: IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS | County: COOK, IL | Job: 7228773 |
|---|---|---|---|
| Plaintiff / Petitioner: Linda I. White | | Defendant / Respondent: Midway Medical Products, Inc., Exactech, Inc. et al. | |
| Received by: Blue 22, LLC. | | For: Meyers & Flowers, LLC | |
| To be served upon: Midway Medical Products, Inc. c/o David C. Ozzello, President | | | |

IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022L005275
Calendar, D
18669691

Philip Pupillo deposes and says that he/she is either a licensed and/or registered employee/agent of a Private Detective Agency, licensed by the Illinois Department of Professional Regulation and therefore authorized, pursuant to the provisions of Chapter 735, Code of Civil Procedure, Section 5/2-202, Illinois Compiled Statutes, to serve process in the above cause.

Recipient Name / Address:   Midway Medical Products, Inc. c/o David C. Ozzello, President, 3907 Royal and Ancient Dr, Saint Charles, IL 60174

Manner of Service:   Business, Jun 29, 2022, 9:47 pm CDT

Documents:   Summons and Complaint

Additional Comments:
1) Unsuccessful Attempt: Jun 18, 2022, 9:47 am CDT at 626 Fox Glen Dr, Saint Charles, IL 60174
I spoke with Scott Martin who stated he bought the house from David approximately eight months ago. Forwarding address unknown.

2) Unsuccessful Attempt: Jun 26, 2022, 7:13 am CDT at 3907 Royal and Ancient Dr, Saint Charles, IL 60174
Attempted contact at address given. No answer at door.

3) Unsuccessful Attempt: Jun 26, 2022, 7:13 am CDT at 3907 Royal and Ancient Dr, Saint Charles, IL 60174
Attempted contact at address given. No answer at door.

4) Successful Attempt: Jun 29, 2022, 9:47 pm CDT at 3907 Royal and Ancient Dr, Saint Charles, IL 60174 received by Midway Medical Products, Inc. c/o David C. Ozzello, President. Age: 70s; Ethnicity: Caucasian; Gender: Male; Height: 6'2"; Hair: Gray;

Under penalties of perjury as provided by law pursuant to section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements are true and correct, except as to matters therein stated to be on information and belief and such matters the undersigned certifies as aforesaid that he/she verily believes same to be true.

_____        6/30/2022
Philip Pupillo                                    Date
117-000192

Blue 22, LLC.
141 W. Jackson Blvd Ste. 300
Chicago, IL 60604
847-561-4390

earing Date: No hearing scheduled
ocation: <<CourtRoomNumber>>
udge: Calendar, D

FILED
7/14/2022 10:56 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022L005275
Calendar, D
18669868

| 2120 - Served | 2121 - Served |
|---|---|
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |

Summons - Alias Summons                                    (08/01/18) CCG 0001 A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Linda L. White
_____

(Name all parties)

v.

Midway Medical Products, Inc., Exactech, Inc.,
Exactech U.S., Inc., TPG Capital and TPG, Inc.

Case No.    2022 L 005275

### X SUMMONS ☐ ALIAS SUMMONS

TPG, Inc., c/o Bradford Berenson, General Counsel, 345 California St., Suite
To each Defendant: 330, San Francisco, CA 94104

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of
which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty
(30) days after service of this Summons**, not counting the day of service. To file your answer or
appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate
this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to
the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief
requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service,
with endorsement of service and fees, if any, immediately after service. If service cannot be made,
this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30)
days after its date.

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**

cookcountyclerkofcourt.org

Page 1 of 3

**Summons - Alias Summons**

(08/01/18) CCG 0001 B

E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp, or talk with your local circuit clerk's office.

7/14/2022 10:56 AM IRIS Y. MARTINEZ

Atty. No.: __Firm #56079__

Witness: _____

Atty Name: __Peter J. Flowers__

Atty. for: __Plaintiff__

Address: __3 N. 2nd Street, Suite 300__

_____

DOROTHY BROWN, Clerk of Court

City: __St. Charles__

State: __IL__ Zip: __60174__

Date of Service: _____
(To be inserted by officer on copy left with Defendant or other person):

Telephone: __630-232-6333__

Primary Email: __pjf@meyers-flowers.com__

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org

## CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

Richard J Daley Center
50 W Washington
Chicago, IL 60602

District 2 - Skokie
5600 Old Orchard Rd
Skokie, IL 60077

District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

District 4 - Maywood
1500 Maybrook Ave
Maywood, IL 60153

District 5 - Bridgeview
10220 S 76th Ave
Bridgeview, IL 60455

District 6 - Markham
16501 S Kedzie Pkwy
Markham, IL 60428

Domestic Violence Court
555 W Harrison
Chicago, IL 60607

Juvenile Center Building
2245 W Ogden Ave, Rm 13
Chicago, IL 60602

Criminal Court Building
2650 S California Ave, Rm 526
Chicago, IL 60608

### Daley Center Divisions/Departments

Civil Division
Richard J Daley Center
50 W Washington, Rm 601
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Chancery Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Domestic Relations Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Civil Appeals
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Criminal Department
Richard J Daley Center
50 W Washington, Rm 1006
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

County Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Probate Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Law Division
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Traffic Division
Richard J Daley Center
50 W Washington, Lower Level
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org

Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Calendar, D

FILED
7/14/2022 10:56 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022L005275
Calendar, D
18669868

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |

Summons - Alias Summons      (08/01/18) CCG 0001 A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Linda L. White
_____
(Name all parties)

v.

Midway Medical Products, Inc., Exactech, Inc.,
Exactech U.S., Inc., TPG Capital and TPG, Inc.

Case No.    2022 L 005275

### X SUMMONS    ALIAS SUMMONS

To each Defendant: TPG Capital, c/o Bradford Berenson, General Counsel, 345 California St., Suite 330, San Francisco, CA 94104

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty (30) days after service of this Summons**, not counting the day of service. To file your answer or appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**
Page 1 of 3

**Summons - Alias Summons** (08/01/18) CCG 0001 B

E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp, or talk with your local circuit clerk's office.

7/14/2022 10:56 AM IRIS Y. MARTINEZ

Atty. No.: ___Firm #56079___

Witness: _____

Atty Name: ___Peter J. Flowers___

Atty. for: ___Plaintiff___

_____

DOROTHY BROWN, Clerk of Court

Address: ___3 N. 2nd Street, Suite 300___

City: ___St. Charles___

Date of Service: _____

State: ___IL___  Zip: ___60174___

(To be inserted by officer on copy left with Defendant or other person):

Telephone: ___630-232-6333___

Primary Email: ___pjf@meyers-flowers.com___

## CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

Richard J Daley Center
50 W Washington
Chicago, IL 60602

District 2 - Skokie
5600 Old Orchard Rd
Skokie, IL 60077

District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

District 4 - Maywood
1500 Maybrook Ave
Maywood, IL 60153

District 5 - Bridgeview
10220 S 76th Ave
Bridgeview, IL 60455

District 6 - Markham
16501 S Kedzie Pkwy
Markham, IL 60428

Domestic Violence Court
555 W Harrison
Chicago, IL 60607

Juvenile Center Building
2245 W Ogden Ave, Rm 13
Chicago, IL 60602

Criminal Court Building
2650 S California Ave, Rm 526
Chicago, IL 60608

### Daley Center Divisions/Departments

Civil Division
Richard J Daley Center
50 W Washington, Rm 601
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Chancery Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Domestic Relations Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Civil Appeals
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Criminal Department
Richard J Daley Center
50 W Washington, Rm 1006
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

County Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Probate Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Law Division
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Traffic Division
Richard J Daley Center
50 W Washington, Lower Level
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org

earing Date: No hearing scheduled
ocation: <<CourtRoomNumber>>
udge: Calendar, D

FILED
7/14/2022 10:56 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022L005275
Calendar, D
18669868

| 2120 - Served | 2121 - Served |
|---|---|
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |

Summons - Alias Summons                                   (08/01/18) CCG 0001 A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Linda L. White

_____
(Name all parties)

v.

Midway Medical Products, Inc., Exactech, Inc.,
Exactech U.S., Inc., TPG Capital and TPG, Inc.

Case No.     2022 L 005275
_____

X  **SUMMONS**     ☐ **ALIAS SUMMONS**

To each Defendant:   Exactech U.S, Inc., c/o Registered Agent, Corporation Service Company, 1201
Hays Street, Tallahassee, Florida 32301-2525

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of
which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty
(30) days after service of this Summons**, not counting the day of service.  To file your answer or
appearance you need access to the internet.  Please visit www.cookcountyclerkofcourt.org to initiate
this process.  Kiosks with internet access are available at all Clerk's Office locations.  Please refer to
the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief
requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service,
with endorsement of service and fees, if any, immediately after service.  If service cannot be made,
this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30)
days after its date.

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**

**cookcountyclerkofcourt.org**

Page 1 of 3

**Summons - Alias Summons**          (08/01/18) CCG 0001 B

E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp, or talk with your local circuit clerk's office.

Atty. No.: ___Firm #56079___

Atty Name: ___Peter J. Flowers___

Atty. for: ___Plaintiff___

Address: ___3 N. 2nd Street, Suite 300___

City: ___St. Charles___

State: ___IL___ Zip: ___60174___

Telephone: ___630-232-6333___

Primary Email: ___pjf@meyers-flowers.com___

7/14/2022 10:56 AM IRIS Y. MARTINEZ

Witness: _____

_____

DOROTHY B. BROWN, Clerk of Court

Date of Service: _____

(To be inserted by officer on copy left with Defendant or other person):

# CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

Richard J Daley Center
50 W Washington
Chicago, IL 60602

District 2 - Skokie
5600 Old Orchard Rd
Skokie, IL 60077

District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

District 4 - Maywood
1500 Maybrook Ave
Maywood, IL 60153

District 5 - Bridgeview
10220 S 76th Ave
Bridgeview, IL 60455

District 6 - Markham
16501 S Kedzie Pkwy
Markham, IL 60428

Domestic Violence Court
555 W Harrison
Chicago, IL 60607

Juvenile Center Building
2245 W Ogden Ave, Rm 13
Chicago, IL 60602

Criminal Court Building
2650 S California Ave, Rm 526
Chicago, IL 60608

## Daley Center Divisions/Departments

Civil Division
Richard J Daley Center
50 W Washington, Rm 601
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Chancery Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Domestic Relations Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Civil Appeals
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Criminal Department
Richard J Daley Center
50 W Washington, Rm 1006
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

County Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Probate Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Law Division
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Traffic Division
Richard J Daley Center
50 W Washington, Lower Level
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

earing Date: No hearing scheduled
ocation: <<CourtRoomNumber>>
udge: Calendar, D

FILED
7/14/2022 10:56 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022L005275
Calendar, D
18669868

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| Summons - Alias Summons | (08/01/18) CCG 0001 A |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Linda L. White

(Name all parties)

v.

Midway Medical Products, Inc., Exactech, Inc.,
Exactech U.S., Inc., TPG Capital and TPF, Inc.

Case No.    2022 L 005275

X **SUMMONS** ☐ **ALIAS SUMMONS**

To each Defendant:    Exactech, Inc., c/o Registered Agent, Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301-2525

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty (30) days after service of this Summons**, not counting the day of service. To file your answer or appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**

**cookcountyclerkofcourt.org**

**Summons - Alias Summons**                                    (08/01/18) CCG 0001 B

E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp, or talk with your local circuit clerk's office.

7/14/2022 10:56 AM IRIS Y. MARTINEZ

Atty. No.: __Firm #56079__                    Witness: _____

Atty Name: __Peter J. Flowers__

Atty. for: __Plaintiff__                        _____

Address: __3 N. 2nd Street, Suite 300__         DOROTHY BROWN, Clerk of Court

City: __St. Charles__                           Date of Service: _____

State: __IL__  Zip: __60174__                   (To be inserted by officer on copy left with
                                                Defendant or other person):
Telephone: __630-232-6333__

Primary Email: __pjf@meyers-flowers.com__

## CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

Richard J Daley Center
50 W Washington
Chicago, IL 60602

District 2 - Skokie
5600 Old Orchard Rd
Skokie, IL 60077

District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

District 4 - Maywood
1500 Maybrook Ave
Maywood, IL 60153

District 5 - Bridgeview
10220 S 76th Ave
Bridgeview, IL 60455

District 6 - Markham
16501 S Kedzie Pkwy
Markham, IL 60428

Domestic Violence Court
555 W Harrison
Chicago, IL 60607

Juvenile Center Building
2245 W Ogden Ave, Rm 13
Chicago, IL 60602

Criminal Court Building
2650 S California Ave, Rm 526
Chicago, IL 60608

### Daley Center Divisions/Departments

Civil Division
Richard J Daley Center
50 W Washington, Rm 601
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Chancery Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Domestic Relations Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Civil Appeals
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Criminal Department
Richard J Daley Center
50 W Washington, Rm 1006
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

County Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Probate Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Law Division
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Traffic Division
Richard J Daley Center
50 W Washington, Lower Level
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

earing Date: No hearing scheduled
ocation: <<CourtRoomNumber>>
udge: Calendar, D

**RETURN OF SERVICE**

FILED
7/22/2022 7:44 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022L005275
Circuit Court
Calendar, D
18778285

**State of Illinois**                          **County of Cook**

Case Number: 2022 L 005275

Plaintiff/Petitioner:
**LINDA L. WHITE**

vs.

Defendant/Respondent:
**MIDWAY MEDICAL PRODUCTS, INC., ET AL**

For:
PETER J. FLOWERS
MEYERS & FLOWERS, LLC
3 NORTH SECOND STREET
SUITE 300
ST. CHARLES, IL 60174

Received by Thornton Process Service on the 20th day of July, 2022 at 10:30 am to be served on **EXACTECH U.S., INC. C/O CORPORATION SERVICE COMPANY, 1201 HAYS STREET, TALLAHASSEE, FL 32301.**

I, Robyn Buda, do hereby affirm that on the **20th day of July, 2022** at **12:20 pm, I:**

Served by delivering in a corporate manner, a true copy of the **SUMMONS and COMPLAINT AT LAW AND JURY DEMAND** with the server's identification number, initials, date, and hour of service endorsed thereon by me on the copy served to: **Sara Lea** who is employed by and is the Authorized Agent/Employee Authorized to accept service for **Corporation Service Company** as **Registered Agent for EXACTECH U.S., INC.,** and informed said person of the contents therein, in compliance with state statutes.

Under Penalties of Perjury, I declare I have read the foregoing document and the facts stated in it are true. I am over the age of 18, of sound mind and neither a party to or interested in the above suit. Notary not required pursuant to F.S. 92.525

**Robyn Buda**
ID#247 2nd Circuit

**Thornton Process Service
1559 West Kingsfield Rd
Cantonment, FL 32533
(850) 478-3333**

Our Job Serial Number: TTH-2022006136
Ref: 6136

earing Date: No hearing scheduled
ocation: <<CourtRoomNumber>>
udge: Calendar, D

## RETURN OF SERVICE

FILED
7/22/2022 7:44 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022L 005275
Circuit Court
Calendar, D
18778285

**State of Illinois**                    **County of Cook**

Case Number: 2022 L 005275

Plaintiff/Petitioner:
**LINDA L. WHITE**

vs.

Defendant/Respondent:
**MIDWAY MEDICAL PRODUCTS, INC., ET AL**

For:
PETER J. FLOWERS
MEYERS & FLOWERS, LLC
3 NORTH SECOND STREET
SUITE 300
ST. CHARLES, IL 60174

Received by Thornton Process Service on the 20th day of July, 2022 at 10:30 am to be served on
**EXACTECH, INC. C/O CORPORATION SERVICE COMPANY, 1201 HAYS STREET,
TALLAHASSEE, FL 32301.**

I, Robyn Buda, do hereby affirm that on the **20th day of July, 2022** at **12:20 pm, I:**

Served by delivering in a corporate manner, a true copy of the **SUMMONS and COMPLAINT AT LAW
AND JURY DEMAND** with the server's  identification number, initials, date, and hour of service endorsed
thereon by me on the copy served to: **Sara Lea** who is employed by and is the Authorized
Agent/Employee Authorized to accept service for **Corporation Service Company** as **Registered Agent
for EXACTECH, INC.,** and informed said person of the contents therein, in compliance with state statutes.

Under Penalties of Perjury, I declare I have read the foregoing document and the facts stated in it are true.
I am over the age of 18, of sound mind and neither a party to or interested in the above suit. Notary not
required pursuant to F.S. 92.525

_____
**Robyn Buda**
ID#247 2nd Circuit

**Thornton Process Service**
**1559 West Kingsfield Rd**
**Cantonment, FL 32533**
**(850) 478-3333**

Our Job Serial Number: TTH-2022006137
Ref: 235615/15979.003

Copyright © 1992-2022 Database Services, Inc. - Process Server's Toolbox V8.2i

# Exhibit B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LINDA I. WHITE,            ) | |
|                    ) | Case No. _____ |
|     Plaintiff,       ) | |
|                    ) | Cook County, Il. Cir. Ct. Index No. |
|                    ) | 2022L005275 |
|                    ) | |
| vs.                ) | |
|                    ) | |
| MIDWAY MEDICAL PRODUCTS, INC.,  ) | |
| EXACTECH, INC., EXACTECH U.S.,   ) | |
| INC., TPG CAPITAL, and TPG, INC.,   ) | |
|                    ) | |
|                    ) | |
|                    ) | |
|                    ) | |
|     Defendants.    ) | |

**CONSENT TO REMOVAL**

       MidWay Medical Products, Inc. ("MidWay"), hereby consents to removal of this action

to the United States District Court for the Northern District of Illinois. This consent to removal is

without prejudice to MidWay's contention that it has been fraudulently joined to defeat diversity

jurisdiction.

  Date: July 29, 2022               Respectfully submitted,

                                  By: *Elizabeth C. Curtin*
                                    Elizabeth C. Curtin
                                    ecurtin@sidley.com
                                    Michelle A. Ramirez
                                    michelle.ramirez@sidley.com
                                    SIDLEY AUSTIN LLP
                                    One South Dearborn Street
                                    Chicago, Illinois 60603
                                    Telephone: (312) 853-7000
                                    Facsimile:  (312) 853-7036

                                    Gabriel Schonfeld (*pro hac vice*
                                    forthcoming)

gschonfeld@sidley.com
SIDLEY AUSTIN LLP
1501 K Street NW
Washington, DC 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711

*Attorneys for Defendant MidWay Medical Products, Inc.*

# Exhibit C

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LINDA I. WHITE, | ) | |
| | ) | Case No. _____ |
| Plaintiff, | ) | |
| | ) | Cook County, Il. Cir. Ct. Index No. |
| | ) | 2022L005275 |
| | ) | |
| vs. | ) | |
| | ) | |
| MIDWAY MEDICAL PRODUCTS, INC., | ) | |
| EXACTECH, INC., EXACTECH U.S., | ) | |
| INC., TPG CAPITAL, and TPG, INC., | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF DAVID OZZELLO II

I, David Ozzello II, state as follows:

1.      I am Chief Financial Officer at MidWay Medical Products, Inc. ("MidWay"). I have held that position for 14 years. In that capacity, I am familiar with MidWay's business, including its sale of the Optetrak® system. This declaration is based on my own personal knowledge and my review of records kept in the course of MidWay's business.

2.      MidWay is an independent sales agent. Through its own employees and independent sales representatives, MidWay sells medical devices which are manufactured by other companies.

3.      MidWay has acted as an independent sales agent for Exactech since 1991. MidWay's sales territory includes 57 counties in Illinois. MidWay has sold the Optetrak® system since 1995.

4.      The Optetrak® system is a line of knee replacement devices. Each Optetrak® device consists of multiple components, including a polyethylene plastic insert intended to provide cushioning for the reconstructed joint.

5.      Pursuant to 735 ILCS 5/2-621, I hereby certify that Exactech, Inc. is the manufacturer of the Optetrak® system.

6.      MidWay has never designed, manufactured, packaged, or labeled the Optetrak® system.

7.      MidWay has never exercised any control over the design, manufacture, packaging, or labeling of the Optetrak® system.

8.      MidWay has always provided the Optetrak® system to physicians in its original packaging, in the same condition in which Exactech provided it to MidWay. MidWay has never modified the Optetrak® system or its packaging in any way.

9.      Midway has never provided Exactech with instructions or warnings regarding the Optetrak® system. That is not its role as an independent sales agent. MidWay could not in any case have developed such warnings or instructions—it is not a medical device manufacturer and has no expertise in analyzing and communicating the risks and benefits of sophisticated joint-replacement devices.

10.     All instructions, warnings, and other labeling that have accompanied the Optetrak® system have been prepared and provided by Exactech with no input from MidWay. MidWay's only role has been to distribute those materials without alteration.

11.     Exactech has also provided MidWay with summaries and analyses of scientific data—including white papers, reports of clinical results, and sales brochures—regarding the Optetrak®'s performance, including rates of wear, device failure, and other adverse events.

12.     MidWay has never provided doctors with any information about Optetrak®, or made any claims to doctors about the performance of that device, other than what Exactech has provided it.

13.     MidWay's employees and independent sales representatives may sell Optetrak® only after they complete training provided by Exactech. MidWay has never had any control over the contents of that training, which is conducted by Exactech employees and includes online modules prepared by Exactech without MidWay's involvement. Nor has MidWay ever conducted its own sales training for Optetrak®.

14.     To the best of MidWay's actual knowledge at the time, the information regarding Optetrak®'s performance that Exactech furnished it prior to Plaintiff's July 27, 2015 procedure was true and correct.

15.     MidWay had no reason to question the accuracy of that information. Its own anecdotal experience with Optetrak® did not suggest that patients were experiencing adverse events (including premature wear and premature device failure) at a higher-than-expected rate. Beyond that narrow experience, MidWay had no independent knowledge of Optetrak®'s risks apart from information it received from Exactech. MidWay did not have either the knowledge or the analytical expertise to investigate the veracity of that information on its own.

16.     MidWay likewise had no knowledge of any alleged defect in Optetrak®'s design or manufacture prior to Plaintiff's July 27, 2015 procedure. In particular:

a.     MidWay lacked any knowledge that Optetrak® devices were experiencing premature wear, premature failure or other adverse events at a higher-than-expected rate, and could not reasonably have discovered such a pattern. MidWay lacked access to either the raw data or analytical expertise necessary to do so.

3

b.  MidWay lacked any knowledge, and could not reasonably have discovered, that some Optetrak® polyethylene inserts were packaged in bags that did not conform to specifications because they omitted a layer of oxygen-protective material. That omission was not apparent from the physical appearance of the bags, and MidWay lacked the technical expertise to otherwise investigate their composition. Midway did not become aware of the nonconforming bags until Exactech initiated a recall of the affected polyethylene inserts on August 31, 2021.

c.  MidWay lacked any knowledge, and could not reasonably have discovered, that Exactech's surgical protocol for the Optetrak® system was inadequate to ensure safe use of the device. No surgeon ever made such a complaint to MidWay, which does not employ any surgeons itself, and lacks the expertise necessary to evaluate the adequacy of a surgical protocol.

[Signature on Following Page]

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct. Executed on July 29ᵗʰ, 2022.

David Ozzello II